# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRUCE F. LYNCH,

        Plaintiff,

v.                                                               Case No. 09-C-994

AIR TRANSPORT, DISTRICT 143 OF THE
INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO,

        Defendants.

## ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

Plaintiff Bruce Lynch brought this action against his former union, International Association of Machinists District Lodge 143 ("IAM" or "Union"), alleging, *inter alia*, that it failed to properly process his grievances arising out of his discharge from Northwest Airlines. Presently before the Court is Lynch's motion to compel a response to, and production of documents associated with, Interrogatory No. 4 which seeks information on other potentially similar grievances the Union processed. For the reasons detailed herein Lynch's motion to compel will be denied.

## BACKGROUND

Lynch worked for Northwest Airlines from 1978 to 2007 and was a member of IAM. He was disqualified from employment as a Customer Service Agent ("CSA") at Austin Straubel Airport in Green Bay, Wisconsin following an incident on November 15, 2007 in which he allegedly had a security failure while working a flight for Compass Airlines, a subsidiary of Northwest, which

allowed a TSA agent to gain unauthorized access to the flight. He then got into an altercation with and allegedly threatened a TSA Agent which led to police being called. As a result, Compass notified Northwest that it was permanently banning Lynch from working on its flights. Because CSAs at Austin Straubel were required to service Compass flights as part of their normal duties, this meant that Lynch was no longer able to perform those duties at Austin Straubel or any other airport at which Northwest worked Compass flights or handled Compass passengers. (Decl. of Paul Knupp III, Ex. B, Doc. 33-2.) Lynch challenged his disqualification by filing grievances against Northwest under the IAM collective bargaining agreement. Northwest denied his grievances in early 2008, and IAM appealed the denials to arbitration.

With no income and unable to pay his bills, Lynch retired (Lynch claims he was constructively discharged) in February 2008. In November 2008, Lynch filed suit in state court against Northwest, Compass Airlines and his supervisor, Randy Bialcik, alleging breach of contract and a civil conspiracy involving those defendants and TSA. That case was removed to this Court but remanded to state court for lack of jurisdiction where it ultimately was settled in April 2010. In the meantime, in February of 2009, IAM notified Lynch that it would not be pursuing arbitration of his grievances against Northwest since he had retired. Lynch then filed the present lawsuit alleging that the IAM violated its duty of fair representation by failing to pursue his grievances at arbitration notwithstanding his retirement.

Lynch alleges that IAM breached its duty to diligently pursue his grievances, first by stalling the process on the purported grounds that it was trying to get him a position in Minneapolis, Minnesota, and then dropping the grievance altogether after he was forced to retire. He challenges IAM's claim that its decision not to pursue Lynch's grievance after he retired was in accordance

2

with its usual practice. In order to refute this purported justification for its action, Lynch sought discovery of other similarly situated grievances that IAM did pursue to arbitration despite the grieving party's decision to quit or retire. It is in that context that the current dispute arises.

Lynch seeks to compel IAM to provide discovery that seeks information related to other union members who retired or quit while they had a grievance pending. Interrogatory No. 2, which is not at issue, sought information over the past ten years concerning grievances that were not pursued after the grieving employee quit or retired. Interrogatory No. 4, which is at issue here, seeks information concerning "every grievance that the IAM has taken forward despite the grieving employee's decision to quit or retire." (Pl. Br. in Supp., Dkt. 32, at 2.) Production of all documents and electronically stored information ("ESI") identified in responding to the interrogatories is also requested.

The Union initially objected to both Interrogatories as "overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence" and on the basis that it would "invade the privacy of individuals not party to this action." (*Id.* at 3.) After consultation with Lynch's counsel, IAM later emailed counsel a searchable, 300-page Word document (Rich Text Format), which showed all grievances from the past ten years that were recorded in the District's database as having been withdrawn due to the grievant no longer being employed. IAM contends, however, that it is unable to provide a similar response to Interrogatory No. 4.

IAM states that it maintains its grievance records in two forms: (1) a hard file containing the documents and correspondence on each grievance; and (2) a searchable computer database program with basic information about each grievance, such as the names of the employee and employer, location, date, summary, and disposition, which can be used to generate custom reports of grievance summaries exportable to a Microsoft Word file. Altogether, IAM claims it has 60,000 grievance

3

files. Because neither set of records has a system for recording the employment status of the grievant or IAM's reasons for taking a grievance to arbitration, IAM claimed it would be impossible for it to identify grievances in response to Interrogatory No. 4.

Lynch, on the other hand, claims the information he seeks is stored in the IAM computer database from which IAM should retrieve it and provide it to him in Excel format. Alternatively, Lynch argues that IAM should simply provide him its grievance database in its entirety so that he can perform his own search. To alleviate IAM's concerns for the privacy of its members, Lynch suggests it can either delete the entire name field for the grievants in the Excel spreadsheet it produces or enter into a protective order under which Lynch would agree to maintain the information as private and confidential.

## ANALYSIS

Rule 33(a) of the Federal Rules of Civil Procedure provides that parties may serve interrogatories on other parties, and that such interrogatories may relate to any matter that may be inquired into under Rule 26(b). Under Rule 26(b)(1) parties may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense". The information sought need not itself be admissible as long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

As a starting point, it is not clear that Lynch has requested discovery within the scope allowed under Fed. R. Civ. P. 26(b). Lynch wants to refute IAM's contention that it followed its usual practice in declining to pursue his grievance after he retired. But IAM concedes that it does not drop the grievance in every case where the grievant retires or quits. Thus, information

4

concerning other grievances that were pursued after the grievants retired or quit would only be relevant if they were in other respects comparable to Lynch. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Industries,* 328 F.3d 309 (7th Cir. 2003) (affirming district court's decision to limit the scope of plaintiffs' discovery request to workers who were similarly situated to the plaintiff); *Gehring v. Case Corp.,* 43 F.3d 340, 342 (7th Cir. 1994) (noting that, when requesting discovery, the "other employees' circumstances [must be] close enough to [plaintiff]'s to make comparisons productive.") Lynch's discovery request seeks grievances that are similarly situated in only one of two respects; he wants all records the Union took forward despite the grievant no longer working, but he does not limit his request to grievances stemming from disqualification decisions made on similar grounds. To be relevant, it would appear that the other grievances must be factually similar to Lynch's – both because the Union pursued the grievance after the Union member no longer worked *and* because the underlying grievance related to situation similar to the one Lynch's case presented. Thus, Lynch's request does appear overly broad.

Even aside from this problem, however, Lynch is not entitled to the relief he seeks. The fact that information is discoverable in a lawsuit does not mean that a party from whom it is sought is obligated to incur whatever cost may be needed to retrieve it. District courts have "discretion to curtail the expense and intrusiveness of discovery" in limiting an adverse party's request for broad discovery of personnel files. *Gehring v. Case Corp.,* 43 F.3d at 342 (7th Cir. 1994). Here, it appears clear from IAM's response to Lynch's motion that the information is simply not retrievable from its database. The computer database does not systematically or regularly record the rationale for IAM's decision to arbitrate grievances, and it does not list the member's employment status at particular points in time. Thus, there is no searchable notation for those grievances that IAM

decides to pursue despite the grievant no longer being employed. Requiring IAM to nevertheless attempt to retrieve such information from its files and computer database would force it to incur substantial costs. There is nothing before me to suggest that IAM can, with the click of a mouse, perform a simple computer search. Instead, identifying the grievances requested in Interrogatory No. 4 would require reviewing the 60,000 physical files of past grievances and cross-referencing the date of each step in the grievance process with the grievant's employment status at the time which the IAM database does not list. (Def. Br. in Opp. at 10.) Lynch has not shown that the likely results of such a search would produce even admissible evidence, let alone evidence so crucial that it would justify the expense required.

Nor is the Court inclined to follow Lynch's suggestion that IAM be ordered to simply turn over its entire grievance database to him. The fact that much information today is electronically stored has not rendered obsolete the rules limiting the scope of discovery; nor does counsel's willingness to stipulate to a protective order provide a license to scavenge through any and all records maintained by the other party. This is especially true where, as here, the party seeking the discovery has resorted to alternative means of obtaining the information sought. In addition to asking for the information by interrogatory, Lynch also requested that IAM "identify the person most knowledgeable within the IAM for policy and rule making on the issue of when to drop a grievance based on the grieving employee's decision to quit or retire when there are potential issues of constructive discharge motivating the employee's decision." Interrogatory No. 1. IAM responded to this interrogatory and provided Lynch with the name of the individual most knowledgeable about the issue. Although Lynch initially scheduled the deposition, he cancelled it when IAM did not provide him the information requested in Interrogatory No. 4. Lynch has made

6

no showing that the previously scheduled deposition would not provide him with the information he is seeking or at least permit him to make more targeted and specific requests.

Finally, Lynch also objects to the manner in which IAM's response to Interrogatory No. 2 was produced. Lynch claims that instead of producing the report in Microsoft Word format, IAM should have produced it in the more searchable Excel format. Lynch's written interrogatories showed a preference for maintaining functionality but did not specify a format for response; counsel for Lynch later verbally requested that the document be produced in an Excel format. By that time, however, the Union had already begun to generate its production in Word format. (*Id.* at 12-13.) Though it is possible to export the IAM database in Excel, the Union customarily exports database reports in Word format because such reports are easier to read and work with. (*Id.*) Counsel for IAM received the reports in Word format from the Union and provided Lynch with the reports in the same format. Based on this record, and the fact that the Word document is searchable, I do not find that defendants "converted" the database to remove functionality. Fed. R. Civ. P. 34(b)(2)(E).

**THEREFORE, IT IS ORDERED** that plaintiff's motion to compel, Dkt. [31], is **DENIED**.

Dated this     17th     day of December, 2010.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge