UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRUCE F. LYNCH,

    Plaintiff,

v.                                                                           Case No. 09-C-994

AIR TRANSPORT, DISTRICT 143 OF THE
INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO,

    Defendant.

## MEMORANDUM AND ORDER

Plaintiff Bruce Lynch brought this action against his former union, International Association of Machinists District Lodge 143 (hereinafter "IAM"), alleging, *inter alia*, that it failed to properly process his grievances arising out of his employment with Northwest Airlines. Presently before the Court is IAM's motion for summary judgment which will be granted for the reasons set forth herein.

## BACKGROUND

Lynch worked for Northwest Airlines from 1978 to 2007 and was a member of IAM. (IAM's Statement of Material Facts (hereinafter "SMF"), Dkt. 43 at ¶¶ 1-2.) On December 21, 2007 Northwest disqualified Lynch from employment as a customer service agent at Austin Straubel Airport in Green Bay, Wisconsin. (SMF ¶ 51.) Lynch's disqualification stemmed from a November 15, 2007 incident involving an undercover Transportation Security

Administration (TSA) employee. On that date Lynch was working as a gate agent for a Compass Airlines flight arriving in Green Bay.[1] Lynch was the only agent working the gate. His responsibilities included helping Compass passengers exit the airplane and then helping to board outgoing passengers on the next flight. (SMF ¶ 29.) As a gate agent, Lynch was responsible for ensuring that no one went through the door without a ticket. (SMF ¶ 30.) Lynch attempted to assist a passenger with a wheelchair. While he was doing so an undercover TSA agent was able to slip past him and gain unauthorized access to the airplane. (SMF ¶ 32.) Unbeknownst to Lynch, the TSA agent was checking the security of the gate and plane. (SMF ¶¶ 26-27.) After boarding the plane, the TSA agent returned to Lynch and revealed herself as an undercover agent. (SMF ¶ 32.) When the TSA agent informed Lynch that she had been able to slip past him and onto the aircraft, Lynch got into an altercation with, and allegedly threatened, the TSA Agent. (SMF ¶ 33.) The police were called in response to the altercation. (SMF ¶ 34.)

As a result, Compass notified Northwest that it was permanently banning Lynch from working on all Compass flights. (SMF ¶ 46.) The Green Bay airport is relatively small and so Northwest's customer service representatives are required to service Compass flights as part of their normal duties. (SMF ¶ 30.) Because Lynch was no longer able work on Compass flights, he was effectively unable perform his duties at the Green Bay airport. Accordingly, Northwest Airlines disqualified Lynch from serving as a customer service agent in Green Bay. But Lynch remained a Northwest Airlines employee and was free to use his seniority to apply for other open Northwest positions. He chose not to do so.

---

[1] Compass Airlines operated flights in and out of Green Bay pursuant to a codeshare agreement with Northwest. Under the agreement Compass provided the aircraft and flight crews and Northwest provided ground services and ground personnel.

2

Instead Lynch challenged his disqualification by filing grievances against Northwest under the IAM collective bargaining agreement. (SMF ¶ 56.) Northwest denied his grievances in early 2008. (SMF ¶ 61.) IAM appealed Northwest's denials to the System Board of Adjustment on February 22, 2008. (SMF ¶ 62.) IAM had a system in place to determine which grievances it took forward to arbitration. The Union had eleven elected General Chairpersons and each grievance appeal was assigned to one General Chair who was responsible for investigating the grievance and handling negotiations with the Company. (SMF ¶ 75.) The IAM did not have a general policy to arbitrate all grievances. (SMF ¶ 80.) Rather the General Chairs would vote on whether or not to take a grievance to arbitration. (SMF ¶ 78.) They would consider such factors as the merits of a particular grievance and the likelihood of success at arbitration based on past arbitration awards. (SMF ¶ 76.) The Chairs initially determined that Lynch's grievance lacked merit but they kept the grievance alive in hopes of negotiating a settlement with Northwest. (SMF ¶¶ 81-82.) The Chair responsible for Mr. Lynch's grievance ultimately negotiated an offer from Northwest which would have allowed Mr. Lynch to return to work as a Northwest telephone reservations agent, a position that would have paid Lynch more than he had been earning as a gate agent.(SFM ¶ 69.) Lynch rejected the offer because the position was located in Minneapolis and he would have had to travel back and forth from his home in Green Bay to the Minneapolis call center for work (though he could fly back and forth at Northwest expense). (*Id.*)

With no income and unable to pay his bills, Lynch retired from Northwest (Lynch argues that he was constructively discharged) in April 2008. (SMF ¶ 73.) Eventually, after Lynch retired, the IAM put Lynch's grievance to a vote and voted unanimously to withdraw Mr. Lynch's grievances and to close his grievance file. (SMF ¶ 88.)

3

In November 2008, Lynch filed suit in state court against Northwest, Compass Airlines, and his supervisor, Randy Bialcik, alleging breach of contract and a civil conspiracy involving those defendants and TSA. (SMF ¶ 86.) That case was removed to this Court but then remanded to state court for lack of jurisdiction where it ultimately resolved in April of 2010.

In October of 2009 Lynch filed the instant action alleging that the IAM violated its duty of fair representation by failing to pursue his grievances at arbitration.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *McNeal v. Macht,* 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson,* 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant

4

is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In addition to the federal rule governing summary judgment procedure, parties are expected to comply with the additional requirements set forth in this district's local rules. *See* Civil L.R. 56. The local rule requires the moving party to provide either a stipulation of facts or a set of proposed findings of undisputed facts on which the motion is based with appropriate citations to evidence in the record that supports the proposed finding. Civil L.R. 56(b)(1)(B), (C). If the opposing party believes there is evidence which places any of the proposed findings of fact submitted by the moving party in dispute, the opposing party must file a response noting the dispute supported by a citation to the record evidence in support thereof. Civil L.R. 56(b)(2)((B)(i). The opposing party may also submit proposed findings of additional facts that warrant denial of the motion, again with appropriate citations to the record. It is the parties' proposed findings of fact, together with the responses thereto that are to form the basis of the ruling the court is then expected to make on the motion for summary judgment. Thus, "[a]ssertions of fact in the parties' supporting memorandum must refer to the corresponding numbered paragraph of the statement of facts, statement of additional facts, or statement of stipulated facts." Civil L.R. 56(b)(6).

## ANALYSIS

Lynch originally filed this action in state court. IAM removed the action to federal court under 28 U.S.C. § 1441 because IAM's duty to Lynch is governed exclusively by federal law. *See Vaca v. Sipes,* 389 U.S. 171, 177 (1967). Lynch asserts two related causes of action against IAM: failure to represent (Am. Compl.¶¶ 14-20) and breach of contract. (Am. Compl. ¶¶ 11-13.) Lynch does not dispute the fact that his state law breach of contract claim is preempted by his federal claim

alleging failure to represent. *Vaca,* 386 U.S. at 177. For this reason summary judgment is proper on Lynch's state law claim and this Court will turn to the failure to represent claim.

The statutory duty of fair representation was developed through a series of cases involving alleged racial discrimination by unions certified as exclusive bargaining representatives under the Railway Labor Act. *See Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Tunstall v. Brotherhood of Locomotive Firemen,* 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944). Where a union is the exclusive bargaining representative of employees, such union has a statutory duty to fairly represent all of those employees, including in its enforcement of the resulting collective bargaining agreement. Such unions must serve the interests of all members without hostility or discrimination, must exercise discretion with complete good faith and honesty, and must avoid arbitrary conduct. *Humphrey v. Moore,* 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370, 367 (1964).

In order to succeed on his failure to represent claim against IAM Lynch must be able to prove both: (1) that his employer violated some specific provision of the collective bargaining agreement which would have been remedied by the contractual grievance process; and (2) that the union violated its duty of fair representation in its handling of his contractual grievance. *See Vaca v. Sipes,* 386 U.S. 171, 186 (1967) (establishing the first prong) and *Steele v. Louisville & Nashville R.R. Co.,* 323 U.S. 192, 202-203 (1994) (establishing the second prong). Even when a lawsuit is targeted only at a union the Seventh Circuit Court of Appeals has held that these "claims are interlocking in the sense that neither is viable if the other fails." *Neal v. Newspaper Holdings, Inc.,* 349 F.3d 363, 368 (7th Cir. 2003).

**A. Allegation that Northwest Airlines Violated the Collective Bargaining Agreement**

To prevail in his suit against IAM Lynch must show that his employer, Northwest, violated the collective bargaining agreement then in place between IAM and Northwest. He must demonstrate that his grievance based on that violation was meritorious and that his alleged injuries would therefore be remedied by a grievance arbitration. *United Steelworkers of Am., ALF-CIO-CLC v. N.L.R.B.,* 692 F.2d 1052, 1058 (7th Cir. 1982).

Lynch cannot so demonstrate. The collective bargaining agreement specifically permits an employee to be disqualified from working in a position for performance reasons so long as the manager had any rational basis for disqualifying the employee. (SMF ¶¶ 14 - 15.) Lynch does not dispute these provisions. (Plaintiff's Response to SAM, Dkt. 50.) Northwest certainly had a rational basis to disqualify Lynch. A detailed discussion of the November 15, 2007 altercation between Lynch and the TSA agent is largely unnecessary. It is uncontested that on that date Lynch propped the gateway door open and left the jetway door unmonitored in violation of FAA regulations. (SMF ¶ 31.) It is also uncontested that a TSA agent was able to slip through the door, past Lynch, and onto the airplane. (*Id.*) It is also uncontested that Compass, in response to Lynch's actions, banned Lynch from working with its flights.[2] Lynch does not dispute that Northwest was responsible for supplying customer service agents who *could* assist with Compass flights. Because a customer service representative who could not handle Compass flights was of little use to Northwest's relatively small operation in Green Bay, Northwest had a rational basis to disqualify

---

[2] Compass Airlines sent Northwest a letter stating "Compass will no longer accept the assignment of agent Bruce Lynch to work the gate for the arrival or departure of any Compass Airline fight at Green Bay". After reviewing this letter Lynch wrote to Compass: "I truly believe if I was in your position and I received the same information, my reaction would have been the same." (SMF ¶¶ 46-47.) While Compass was a Northwest subsidiary, Lynch presents no evidence that Compass lacked the authority to ban Lynch from working on Compass flights.

7

Lynch from working as a customer service agent in Green Bay. Northwest, therefore, did not violate the collective bargaining agreement which allowed for disqualification so long as there was "any rational basis for local management's decision to disqualify the employee." (Collective Bargaining Agreement at Article II(G)(3)(1), Ex. A to Dkt. 44.) Here, because there was a rational basis for Northwest's decision to disqualify Lynch, his grievance was meritless. For this reason summary judgment is proper as to Lynch's failure to represent claim. *See Ooley v. Schwietzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1302 (7th Cir. 1992) (failure to represent claim based on union's failure to arbitrate "cannot withstand summary judgment" where plaintiff's contract claim is meritless).

**B. Alleged Breach of the Duty of Fair Representation**

Even assuming Lynch could show that Northwest violated the collective bargaining agreement Lynch would *also* need to demonstrate a triable issue on his claim that IAM breached its duty of fair representation by not taking Lynch's grievance to arbitration. Thus, Lynch would need to show that IAM's decision not to take his grievance to arbitration was either "arbitrary, discriminatory or in bad faith." *Vaca,* 386 U.S. at 190. Summary judgment is proper because Lynch can show none of the three.

First, Lynch cannot show IAM's decision was arbitrary. Arbitrariness can be shown "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' . . . as to be irrational." *Air Line Pilots Ass'n,* 499 U.S. at 67 (citation omitted); *Filippo v. N. Ind. Public Serv. Corp.,* 141 F.3d 744, 749 (7th Cir. 1998). Lynch points to no rule requiring IAM to take every grievance – regardless of the merits – all the way to arbitration. Lynch concedes that an employee has no "absolute right to have his

8

grievance taken to arbitration." (Plaintiff's Br., Dkt. 54 at 24.) A union's decision to drop a grievance is not arbitrary so long as the union could make a "colorable argument" that "the grievance [was] meritless" at "the time of the union's decision to drop its support" for the grievance. *I McKelvin v. E.J. Brach Corp.,* 124 F.3d 864, 867-68 (7th Cir. 1997) (*quoting Trnka v. Local Union No. 688,* 30 F.3d 60, 61 (7th Cir. 1994)). In light of this "extremely deferential standard" I cannot find a triable issue regarding IAM's decision not to take Lynch's grievance to arbitration. *Id.* at 867. First, as noted above, Lynch's grievance had little merit (in light of the fact that Lynch cannot show that Northwest's actions violated the IAM/Northwest collective bargaining agreement). Accordingly, IAM's General Chairs reasonably concluded that there was no sufficient basis to argue – in an arbitration proceeding – that Northwest had violated the collective bargaining agreement by disciplining Lynch. Second, before the Chairs voted, the IAM had unsuccessfully arbitrated another union member's grievance involving similar facts. (SMF ¶ 90.) The IAM was not required to pursue a position that had previously proven unsuccessful. Third, Lynch had retired and forfeited his seniority before the union voted not to take his grievance to arbitration. Lynch has no evidence that the IAM was required to doggedly pursue Lynch's meritless grievance even after he retired from Northwest. In sum the IAM had reasons not to take Lynch's grievance to arbitration. Ultimately this Court "will not substitute its judgment for that of the union, even if, with the benefit of hindsight it appears the union could have made a better call." *McKelvin v. E.J. Brach Corp.,* 124 F.3d 864, 867 (7th Cir. 1997) (omitting internal quotations).

Second, Lynch cannot show that IAM's decision was discriminatory. Discriminatory conduct is that which is "intentional, severe, and unrelated to legitimate union objectives," such as invidious discrimination based on race or gender. *Amalgamated Ass'n of St., Elec. Ry. & Motor*

9

*Coach Employees of Am. v. Lockridge,* 403 U.S. 274, 301 (1971). Lynch has not alleged that race or gender played any role in IAM's decision not to take his grievance to arbitration. At most Lynch suggests that the General Chair responsible for his grievance, Mr. Cross, had a personality conflict with Lynch. (Plaintiff's Br., Dkt. 54 at 26.) This inference is belied by the fact that Mr. Cross did negotiate with Northwest on Lynch's behalf and successfully persuaded Northwest to offer Lynch an opportunity to work in Northwest's reservations center – a position where Lynch would actually be paid *more* than what he was paid as a customer service representative. But, even assuming that Mr. Cross did not like Lynch, the fact remains that Mr. Cross was just *one* of the General Chairs. Lynch cannot show IAM's decision was discriminatory where all *ten* General Chairs voted unanimously not to take Lynch's claim to arbitration.

Third, Lynch cannot show that IAM acted in bad faith. Bad faith requires "substantial evidence of fraud, deceitful action or dishonest conduct." *Id.* at 299. Mere negligence, poor judgment, or even ineptitude on the union's part do not constitute a breach of its duty. *Neal,* 349 F.3d at 370. Here, as explained in detail above, IAM reviewed Lynch's grievance, negotiated on his behalf with Northwest, and ultimately made a reasoned decision not to take the grievance to arbitration. In light of these undisputed facts Lynch cannot show substantial evidence of fraud, deceitful action or dishonest conduct.

## CONCLUSION

Summary judgment is warranted here because Lynch cannot show a genuine dispute as to any material fact. He cannot show that Northwest violated the collective bargaining agreement or that his grievance against Northwest had merit. Even if he could make such a showing Lynch still

cannot demonstrate that IAM's decision not to take his grievance to arbitration was arbitrary, discriminatory, or made in bad faith. Accordingly, and for the reasons set forth herein, Defendants' motion for summary judgment (Dkt. 42) is **granted**.

**SO ORDERED** this 29th day of June, 2011.

                                               s/ William C. Griesbach
                                               William C. Griesbach
                                               United States District Judge